No. 2607.—SINNOT & ADAMS *v.* GERVAIS SCHLATER et al.—SINNOT & ADAMS *v.* DAVID N. BARROW.   (Consolidated.)

*Where the evidence shows that the owner of a promissory note placed it in the hands of commercial agents for the purposes of negotiation, and the agents afterwards bring suit as owners, the maker of the note can plead all the equities in the suit that may exist against the original holder and owner, although it may be shown that the note came into their possession, as agents, before maturity.*

APPEAL from the Fifth Judicial District Court, parish of Iberville. *Posey,* J.  *Bentinck Egan,* for plaintiffs and appellees.  *Barrow &. Pope,* for defendants and appellants.

WYLY, J.  Plaintiffs have sued the defendants as makers and indorsers of a promissory note for $3000, given to J. D. Clark for the charter of the steamboat "Mattie Cook," who authorized the charterers to make certain repairs to said boat, and deduct the cost thereof in settling said note.

The defendants admitted the signatures, and the correctness of the note, but claimed a deduction of $840, for costs of the repairs made, according to the agreement of Captain Clark, and alleged that at its maturity said note belonged to him, and if ever transferred to the plaintiffs, was so transferred after maturity, and is held by them only for collection.

There was judgment for plaintiffs, and the defendants have appealed.

The only question in this case is, whether the plaintiffs are the holders of the note before maturity for value, and without notice of the equities between the original parties to the instrument.

It appears that Clark was the master or agent of both the "Mattie-Cook" and "Homeyer;" that, in order to raise funds to pay in part the repairs to the Homeyer, he gave to Sinnot & Adams, commercial agents of said boat, the note sued on, which they indorsed and negotiated in the City National Bank, and placed the proceeds thereof, less $75, the amount of commissions and interest, to the credit on their books of said steamer Homeyer, or Captain Clark.

One of the plaintiffs, Sinnot, testifies that:  "The note of $3000 was discounted in the City National Bank; after this, and when the note fell due, Sinnot &. Adams paid the amount of said note, say $3000, to the City National Bank, which left the steamer Homeyer, or Captain Clark, indebted to us in the sum above mentioned."

It appears to us, from the evidence, that Sinnot & Adams acted throughout merely as commercial agents, and never owned the note, nor did they ever hold it in pledge.  The note was given to Clark by the defendants; he indorsed it to the plaintiffs for the purpose of raising funds to pay for repairs to the Homeyer; they, being commercial agents of the Homeyer, indorsed the note and got it discounted at the City National Bank, and after charging Clark $75, the amount of commissions and interest, they credited his account with the proceeds—

$2925; when the makers of the note failed to pay it at maturity, they took it up, and charged the $3000 advanced for. that purpose to the Homeyer, or Clark; after erasing their indorsement, and also Clark's indorsement, they brought suit on the note in their name, but charged Clark the $20 cash for expenses to Plaquemine to bring the suit.

Now, if they owned the note, why did they charge Clark commissions for selling or negotiating it, and credit his account with the proceeds? If they owned the note, why did they charge Clark with the $3000 advanced to take it up after the makers failed to pay it? If they owned the note, why did they release Clark as an indorser by erasing his signature from the note after taking it up? If they owned the note, why did they charge Clark the $20 cash expended in going to Plaquemine to bring this suit?

We hardly think an intelligent commercial firm of this city would charge commissions for indorsing and negotiating paper which belonged to themselves, and that they would so far forget their own interest as to place the proceeds of an asset belonging to them to the credit of another person. Nor do we think they would take up their asset at the bank to protect their name as indorsers, and charge another person with the amount of cash advanced to redeem that which belonged not to him, but to themselves. It is also quite improbable that Sinnot & Adams would erase Clark's name as indorser, if they owned the paper; and still more so that they would charge Clark with cash advanced by them to go to Plaquemine to bring this suit, if they owned the note.

From their own books, and from their own evidence, we have no doubt that Clark has the same ownership and control of the note that he had at the time it was given to him. Plaintiffs' connection with it has evidently been that of commercial agents, acting for the party who placed it in their hands, charging commissions for negotiating it at the bank, and crediting the proceeds, and again charging the cash advanced to redeem it at maturity, and again charging all expenses incurred in instituting this suit to the party owning the note. Add to this the testimony of M. Pilcher, who says: "After the maturity of this note, witness was present at a conversation had in the office of Pilcher & Barrow, between David N. Barrow and J. D. Clark; witness recollects that J. D. Clark called upon David N. Barrow at that time to settle this note, and Mr. Barrow offered to settle the note, if Mr. Clark would allow the credit of this account upon it; Mr. Clark refused to do it." Add to this the evidence of David N. Barrow, who, at the maturity of the note, notified Captain Clark to meet him at the office of Pilcher & Barrow, who says that: "Witness found Captain Clark there when he arrived, and immediately entered on the subject of that note; witness showed him this account, annexed to defendants' answer, as well as the agreement he had made at the mouth of Red River, and which witness had with him, and told him that if he would allow that

account, he was ready to settle the balance of the note; Mr. Clark refused to do so, became very angry, and left the office. During that conversation in everything that Mr. Clark said he led witness to believe he was the holder of the note."

From the evidence, we are satisfied that the plaintiffs only hold the note for collection for Clark, and that the defendants have the right to interpose any offsets or equities they have as against him. There is no doubt of the correctness of the account of $840 for repairs to the "Mattie Cook," and that the same was agreed to by Clark. The correctness of the amount of the note, except the amount of this offset, was admitted by the defendants, and judgment was entered against them, on motion, before the final trial in the court *a qua*. The contest, then, at the trial, was only as to the amount for which the defendants claim the aforesaid deduction.

We are satisfied that the judgment appealed from is erroneous.

It is therefore ordered that the judgment of the court *a qua* be reversed and annulled, and that there be judgment for the defendants, the plaintiffs paying costs of appeal and all costs of the court below arising since the entry of judgment, on motion, for the amount admitted to be due by the defendants.

---

TALIAFERRO, J., *dissenting.* The note belonged to the owners of the "Mattie Cook." That is clear from the record, and the presumption that would otherwise arise that Clark was the owner is rebutted. Then, *ab initio*, the note did not belong to the owners of the Homeyer, and could not become the property of that company without a transfer or some legal process by which the title passed. Now, I consider that it is wholly immaterial whether Sinnot & Adams took the note unconditionally, as a credit *pro tanto* on the debt the Homeyer owed them, or whether they took it with the condition that they would collect it, and, after paying the expenses of collection, pass the amount realized to the credit of the Homeyer.

The note was transferred by Clark in August, and it became due in October following. Clark indorsed the note over to Sinnot & Adams, either in their own right or as the agents of the Homeyer. In either case there was a transfer before the maturity of the note, and there is not the slightest evidence in the record showing that Sinnot & Adams, when they took the note, knew that it was entitled to the credit the defendants contend for. Clark, I understand, was the agent for the Homeyer, and the agent also of the Mattie Cook. Sinnot & Adams were not the agents of Clark. The evidence is plain that he held the note as the agent of the Mattie Cook.

It is clear to me that Sinnot & Adams were entirely satisfied that the

note was good, and would be paid when it fell due, and took it uncon-
ditionally. They credited the Homeyer with the amount of it, after
deducting the discount they made on it when they negotiated it in
bank; and when, at its maturity, it was protested, and they took it
up, they were again in the same position they were when they first took
it. Their going back upon Clark for costs of protest, etc., shows
nothing that alters their position as *bona fide* holders, without notice
of equities between the prior parties.

For these reasons, I dissent from the opinion of the majority of the
court. · Story on Promissory Notes, page 222, section 195.

Rehearing refused.·